**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **JACQUETTA L. CLAYTON** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:22-CV-984-P** |
| | § | |
| **AMAZON.COM SERVICES LLC** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION REGARDING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S
OBJECTIONS TO PLAINTIFF'S SUMMARY JUDGMENT EVIDENCE**

Pending before the Court is Defendant Amazon.com Services LLC ("Amazon")'s Motion for Summary Judgment [doc. 97], filed October 31, 2024, and Defendant's Objections to Plaintiff's Summary Judgment Evidence [doc. 118], filed December 19, 2024. Having carefully considered the motion, response, reply, and applicable law, the Court recommends that Defendant Amazon's motion be **PARTIALLY DENIED** and **PARTIALLY GRANTED**. Having carefully considered Defendant's Objections to Plaintiff's Summary Judgment Evidence, the Court recommends that that such objections be **SUSTAINED** or **OVERRULED** as set forth below.

## I.    FACTUAL BACKGROUND

On November 1, 2022, Plaintiff Jacquetta L. Clayton ("Clayton"), who was proceeding *pro se* at the time, filed a Complaint against Amazon. Based on a lengthy and convoluted procedural history, which includes Plaintiff obtaining counsel on January 30, 2024 [doc. 63], the Court allowed Plaintiff to file multiple complaints.[1] Plaintiff, on March 12, 2024, filed her Third Amended Complaint [doc. 72], which is the current live pleading before the Court. In the Third

---

[1] The Court notes that Plaintiff substituted her original counsel with her present counsel on October 9, 2024 [doc. 94].

Amended Complaint, Plaintiff alleges claims pursuant to the Americans with Disabilities Act ("ADA") against Defendant for intentional discrimination, refusing to make accommodations, harassment, failing to allow Plaintiff access to new job opportunities, and retaliation. (Plaintiff's Third Amended Complaint ("Pl.'s Third Am. Compl.") at 6-7.)

Plaintiff began her employment with Amazon on October 8, 2020, as a Fulfillment Associate in the Pack Singles Area. (Plaintiff's Brief in Support of Response to Defendant's Motion for Summary Judgment ("Pl.'s Resp. Br.") at 6, 10.) Plaintiff "was largely responsible for 'slamming' boxes in accordance with the slam rate established by Defendant." (Pl.'s Resp. Br. at 10; *see* Plaintiff's September 9, 2024 Deposition ("Pl.'s Depo.") at 146.) [2] "The crux of Plaintiff's allegations originate[ ] from an injury she suffered on June 16, 2021, while working at Defendant's fulfillment center in Dallas, Texas." (Pl.'s Resp. Br. at 6; *see* Pl.'s Third Am. Compl. at 2-3; Pl.'s Depo. at 90, 109-110.)

In its Brief in Support of its Motion for Summary Judgment, Amazon argues that it is entitled to judgment as a matter of law on each of Plaintiff's ADA claims for the following reasons: (1) all of Plaintiff's ADA claims fail because Plaintiff was not a qualified individual with a disability; (2) Plaintiff's disability discrimination claim fails because Plaintiff has provided no evidence of an adverse employment action that was motivated by Plaintiff's alleged disability; (3) Plaintiff's failure-to-accommodate claim fails because the evidence shows that Amazon approved Plaintiff for every accommodation and leave request that she supported with proper evidence; (4) Plaintiff's disability harassment claim fails because there is no evidence of severe or pervasive

---

[2] The Court notes that portions of Plaintiff's deposition are contained in Defendant's Appendix in Support of Motion for Summary Judgment ("Def.'s App.") at Exhibit A and Plaintiff's Appendix in Support of Response to Motion for Summary Judgment ("Pl.'s App.") at 55-96.

harassment based on Plaintiff's alleged disability; (5) Plaintiff's disability retaliation claim fails because there is no evidence that Plaintiff suffered a materially adverse action or that a causal connection exists between Plaintiff's requests for accommodation or any other protected activity and any alleged materially adverse action; and (6) Plaintiff's disability discrimination and retaliation claims also fail because she cannot show that the legitimate, nondiscriminatory, and nonretaliatory reasons for Amazon's actions were pretextual. (Defendant's Brief in Support of its Motion for Summary Judgment ("Def.'s Br.") at 1-2; *see* Def.'s Br. at 11-19.)

## II.    LEGAL STANDARD AND ANALYSIS

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A dispute] is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan v. Hildalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001). A fact is "material" if it would affect a case's outcome. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[3]

---

[3] To be entitled to summary judgment on a claim or defense on which the moving parties will bear the burden of proof at trial, the movants "must establish 'beyond peradventure all of the essential elements of the claim or defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that the movants must demonstrate that there are no genuine and material fact disputes and that they are entitled to summary judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F. Supp.2d 914, 923-24 (N.D. Tex. 2009) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-CV-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007)).

When a party moves for summary judgment on claims on which the opposing parties will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the nonmovants' claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party does so, the nonmovants must go beyond their pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the nonmovants' favor. *Anderson*, 477 U.S. at 248. The nonmovants' failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F. Supp. 2d 613, 623 (N.D. Tex. 2007). Summary judgment is mandatory if the nonmovants fail to meet this burden. *Little*, 37 F.3d at 1076.

In assessing whether summary judgment is appropriate, the Court views evidence in the light most favorable to the nonmovant. *Cunningham v. Circle 8 Crane Servs., LLC*, 64 F.4th 597, 600 (5th Cir. 2023). Although the Court is required to consider only the cited materials, it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3); *see generally Celotex Corp.*, 477 U.S. at 322 (noting summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law") (internal quotation marks omitted). Nevertheless, Federal Rule of Civil Procedure ("Rule") 56 "does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992). Parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (citation omitted). Disposing of a case through summary judgment serves to reinforce the purpose of the Federal Rules of Civil Procedure, which is "to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot*, 780 F.2d at 1197.

A.    <u>**Qualified Individual With a Disability**</u>

In its brief, Amazon argues that it is entitled to summary judgment on all of Plaintiff's ADA claims against it because Plaintiff cannot show that she was a qualified individual with a disability. (Def.'s Br. at 18-19.) In support, Amazon states:

> Here, Plaintiff testified that she is unable to perform any of the job duties of a Fulfillment Associate, with or without an accommodation, and can no longer

work. Further, Plaintiff received both [short-term disability ("STD") and long-term disability ("LTD")] benefits, and, in connection with her LTD benefits, it was determined that she had a permanent disability. Plaintiff's receipt of disability benefits is fundamentally inconsistent with claiming to be a qualified individual with a disability, and, as such, she is estopped from claiming the latter status.

(Def.'s Br. at 19.)

In her response, Plaintiff argues that "Defendant misleads this Court as to Plaintiff's status as a qualified disabled person, and the viability of her disability claims currently before the Court." (Pl.'s Resp. Br. at 15.) Plaintiff claims that, although she "testified that she is *currently* unable to perform any of the job duties of a Fulfillment Associate, the law is well settled that an ADA claimant must prove that he or she was disabled **at the time of the alleged discriminatory act**." (Pl.'s Resp. Br. at 15 (internal quotation marks and citations omitted) (emphasis in original).) Plaintiff states that she was injured on June 16, 2021, forced on STD in October 2021, and, placed on LTD in April 2022. (*Id*. at 15; *see* Pl.'s Depo. at 110, 118-19; Def.'s App. at 93-94.) Plaintiff claims that, at the time of her original injury in June 2021 and prior to her receipt of LTD, she "suffered bilateral impairments to her hands and wrists, related to a specific workplace incident, which restricted her from engaging in her normal duties of 'slamming' boxes." (Pl.'s Resp. Br. at 15-16.) Plaintiff states that she has testified that her injury caused substantial limitations in the use of her hands to perform many functions essential to, *inter alia*, caring for herself, performing manual tasks, and working. (*Id*. at 16.) Plaintiff argues she has testified that, while she can no longer perform the job duties of a Fulfillment Associate, with or without an accommodation, she was able to perform her job duties with an accommodation up until April 23, 2022. (*Id*. at 17; *see* Pl.'s Depo. at 118-19, 152, 233-35, 277-78; Def.'s App. at 93-94.)[4]

---

[4] The Court notes that Defendant did not address Plaintiff's arguments regarding this issue in its reply.

The ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability in regard to . . . advancement, . . . employee compensation, job training, or other terms, conditions, and privileges of employment."[5]  42 U.S.C. § 12112(a).  It also prohibits an employer from "discriminat[ing] against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]."  42 U.S.C. § 12203(a).  Under the ADA, a "qualified individual" is an individual "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  Plaintiff bears the burden to show that she was "qualified" under the ADA.  *See Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 419 (5th Cir. 2017).  To survive summary judgment on the qualified-individual issue, Plaintiff must show either: (1) that "[she] could perform the essential functions of [her] job in spite of [her] disability" or (2) "that a reasonable accommodation of [her] disability would have enabled [her] to perform the essential functions of the job."  *Weber v. BNSF Ry. Co.*, 989 F.3d 320, 324 (5th Cir. 2021).

In this case, it is clear that, for purposes of a motion for summary judgment, there are no genuine issues of material fact regarding whether Plaintiff is a qualified individual who, with or

---

[5] An individual is considered disabled within the meaning of the ADA if she (1) has a "physical or mental impairment that substantially limits one or more [of her] major life activities;" (2) has "a record of such an impairment;" or (3) is "regarded as having such an impairment."  42 U.S.C. § 12102(1).  "Major life activities" are defined to include, but not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A).  An individual can be said to be "regarded as" having an impairment "if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."  42 U.S.C. § 12102(3)(A).

without reasonable accommodation, could perform the essential functions of her job *at the time of the alleged discriminatory acts*.[6] (*See*, *e.g.*, Pl.'s Depo. at 109-10, 136-37, 210; Def.'s App. at 91-94.) As set forth above, Plaintiff has provided evidence that she was disabled in that she had a physical impairment that substantially limited one or more of her life activities and that she, with reasonable accommodation, could perform the essential functions of her job duties. Consequently, Defendant is not entitled to summary judgment on this issue.

B.    **Disability Discrimination under the ADA**

Defendant, in its motion, also argues that it is entitled to summary judgment on Plaintiff's disability discrimination claims because Amazon did not take any alleged adverse action against Plaintiff because of her disability. (Def.'s Br. at 11-16.) Defendant claims that "Plaintiff's disability discrimination claim is based on a series of minor employment actions"—moving her chair or workstation, accusing Plaintiff of accessing confidential computer data, and denying Plaintiff the opportunity to apply for a different position—"that she speculates were motivated by discriminatory animus for no reason other than she claims to be disabled." (Def.'s Br. at 11.)

Plaintiff, in her response, argues that the absence of an ultimate employment action does not mean that there was no adverse action taken against her to support her claim of disability discrimination. (Pl.'s Resp. Br. at 22.) Plaintiff states that she suffered "many alleged harms . . . after she became disabled, and all of these actions when viewed in totality adversely affected her working experience." (*Id.*)

---

[6] The Court notes that Defendant acknowledges that the allegations in Plaintiff's Third Amended Complaint do not include any events after March 30, 2022, which includes Plaintiff's termination for job abandonment in September 2022. (Def.'s Br. at 10.)

Defendant, in its reply, Defendant claims that Plaintiff, because she did not address the accusation that she accessed confidential computer data, has abandoned such claim. (Def.'s Reply at 2.) In addition, Defendant claims that "Plaintiff makes no attempt to establish that Amazon's alleged action of moving or switching her chair meets the standard for an adverse employment action," but, instead, "attempts to rebrand her failure to accommodate claim as an 'adverse employment action' for purposes of her disparate treatment claim." (*Id.* at 3.) Defendant also argues that "Plaintiff cannot controvert the lack of evidence that she received less favorable treatment *because of* her disability." (*Id.* at 4 (emphasis in original).)

In the absence of direct evidence of discrimination, as in this case, Courts evaluate ADA claims under the burden-shifting framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1983). *See Caldwell v. KHOU-TV*, 850 F.3d 237, 241 (5th Cir. 2017) ("To establish an ADA discrimination claim, a plaintiff may present direct evidence that [she] was discriminated against because of [her] disability or alternatively proceed under the burden-shirting analysis first articulated in *McDonnell Douglas Corp. v. Green* . . . ." (internal quotation marks omitted).) To establish a *prima-facie* claim of discrimination under the ADA, Plaintiff bears the initial burden to prove that she (1) has a disability; (2) was qualified for the job; and (3) was subject to an adverse employment decision on account of her disability. *Mueck v. La Grange Acquisitions, L.P.*, 75 F.4th 469, 483 (5th Cir. 2023) (internal quotation marks and citations omitted); *Caldwell*, 850 F.3d at 241.

As to ADA claims, "the Fifth Circuit has adopted the same definition of 'adverse employment' action as applies in Title VII claims." *Ricks v. Friends of WWOZ, Inc.*, No. 18-9767, 2019 WL 4671582, at *11 (E.D. La. Sept. 25, 2019). While "[t]he Fifth Circuit[, in *Hamilton v.*

*Dallas County*, 79 F.4th 494 (5th Cir. 2023),] recently expanded the universe of actionable employment actions under Title VII[,]" an adverse employment action still requires Plaintiff to establish that she was discriminated against with respect to hiring, firing, compensation, or the terms, conditions, or privileges of employment. *Fleming v. Methodist Healthcare Sys. of San Antonio, Ltd., L.L.P*, No. SA-21-CV-01234-XR, 2024 WL 1055120, at *11 (W.D. Tex. Mar. 11, 2024); *see Hamilton*, 79 F.4th at 502-03. Federal anti-discrimination law is not meant to be a "general civility code," and, as such, does not guard against "de minimis workplace trifles." *Hamilton*, 79 F.4th at 505. A Plaintiff must show "*some harm* respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis*, 601 U.S. 346, 354-55 (2024) (emphasis added). "The challenged action must not only involve a meaningful difference in the terms of employment but also injure the affected employee." *Fleming*, 2024 WL 1055120, at *12. In other words, Plaintiff must show "some 'disadvantageous' change in an employment term or condition." *Muldrow*, 601 U.S. at 347.

If Plaintiff is able to establish a *prima-facie* case of discrimination, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions,[7] after which the plaintiff bears the burden to prove that the employer's explanation was a pretext for discrimination." *Mueck*, 75 F.4th at 483 (internal quotation marks and citations omitted). "To carry the burden of showing pretext, [t]he plaintiff must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates." *Mueck*, 75 F.4th at 483 (internal quotation marks and citations omitted) (alterations in original). Plaintiff may do so "by presenting

---

[7] Amazon's "burden is one of production, not proof, and involves no credibility assessments." *Polak v. Sterilite Corp.*, No. 3:19-CV-2972-D, 2021 WL 1753757, at *4 (N.D. Tex. May 4, 2021).

evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Mueck*, 75 F.4th at 483-84 (internal quotations marks and citations omitted); *see Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 480 (5th Cir. 2016) "In the summary-judgment context, the question is not whether the plaintiff proves pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext." *Mesa v. City of San Antonio*, No. SA-17-CV-654-XR, 2018 WL 3946549, at *19 (W.D. Tex. Aug. 16, 2018).

As set forth above, Defendant argues, *inter alia*, that Plaintiff has failed to establish the third-prong of establishing a *prima-facie* case of disability discrimination—that she was subject to an adverse employment decision because of her disability.[8]  (Def.'s Br. at 11.)  As to the third prong, Plaintiff alleges that the following were adverse employment actions taken against her by Amazon because of her disability: (1) certain managers made her move workstations or switched her chair; (2) she was accused of accessing confidential computer data; (3) she was denied the opportunity to apply for a different position; and (4) her STD benefits were repeatedly cut off. (*See* Pl.'s Third Am. Compl. at 2-7; Def.'s Br. at 11-14; Pl.'s Resp. Br. at 22.)

### 1. Moving of Plaintiff's Workspace or Chair and Accessing Confidential Computer Data

As to Plaintiff's claims that certain managers made her move workstations or switched her chair and that she was accused of accessing confidential computer data, the Court finds and concludes that there is no genuine issue of material fact that such situations are not adverse employment actions. *See, e.g.*, *Castro v. Bexar Cnty.*, No. 5:23-CV-08-DAE, 2024 WL 3071571,

---

[8] As to the first and second prongs of establishing a *prima-face* case of disability discrimination, the Court has already found that there is no genuine issue of material fact that Plaintiff has a disability, and Defendant does not dispute that Plaintiff was qualified for her job.

at *3 (W.D. Tex. May 14, 2024) ("However, there is no case law supporting that Plaintiff's office location rises to a level of adverse employment action."); *Daniel v. Bd. of Supervisors for La. State Univ. Agric. And Mech. Coll.*, No. 21-30555, 2022 WL 105578, at *6 (5th Cir. 2022) (finding that a move to a smaller office than Plaintiff preferred after requesting a move to a different office is not an adverse employment action); *Burchfield v. S. La. Med. Assocs.*, No. 23-1501, 2023 WL 5952183, at *5 (E.D. La. Sept. 13, 2023) (discussing *Hamilton* and stating that "an employer's decision to place an employee on paid leave, whether administrative or sick, by itself does not constitute an adverse employment action"); *Lee v. Bexar Cnty.*, No. SA-22-CV-1149-OLG, 2023 WL 3150090, at *3 (W.D. Tex. Mar. 29, 2023) ("Criticism, investigations, or false accusations, however, are not considered adverse employment actions."); *Gilb v. Univ. of Houston*, No. A-19-CV-831-RP, 2020 WL 7865262, at *8 (W.D. Tex. Dec. 30, 2020) (holding that "falsely accusing [plaintiff] of failing to attend a training course does not constitute an adverse employment action" because "[m]ere accusations, without more, are not adverse employment actions"). While Plaintiff argues that "each of these [and other] incidents individually and collectively made Plaintiff's job objectively worse" (Pl.'s Resp. Br. at 23), the Court finds and concludes that the moving of Plaintiff's chair or workstation by Defendant were de minimis workplace trifles or petty slights and that the investigation into whether Plaintiff accessed confidential information[9] did not result in some objective and tangible harm relating to an identifiable term or condition of Plaintiff's employment such as responsibility, pay, or benefits. Consequently, such actions cannot be adverse

---

[9] The result of such investigation found Clayton had committed "no policy investigation" and no action was taken against Clayton. (*See* Def.'s App. at 109-111.)

employment actions, and Plaintiff has failed to establish a *prima-facie* case of disability discrimination as to these actions.

## 2.    Cutting Off of Plaintiff's STD Benefits

As to Plaintiff's disability discrimination claim that her STD benefits were repeatedly cut off because of her disability, even assuming without deciding that  Plaintiff could establish a *prima-facie* case of discrimination, Defendant would still be entitled to summary judgment if it can show it had a legitimate, nondiscriminatory reason for its actions and Plaintiff cannot show such reason was a pretext for discrimination. *See E.E.O.C. v. Modern Grp., Ltd.*, 725 F. Supp. 3d 577, 632 (E.D. Tex. Mar. 25, 2024).  Amazon claims that the errors in processing Plaintiff's STD benefits were due to a backlog and that Plaintiff did eventually end up receiving all of her STD benefits.  (Def.'s Br. at 8-9; *see* Def.'s App. at 124-25; Pl.'s Depo. at 179, 267-68.)  Thus, the burden shifts back to Plaintiff to show that such reason is pretextual.  *See Delaval*, 824 F.3d at 480 ("In response to a motion for summary judgment, an employee must present 'substantial evidence' that the employer' legitimate, non discriminatory reason . . . is pretextual.").

Plaintiff stated, in her deposition, that she had no idea why her case manager, Donna Turnley ("Turnley"), cut off her STD benefits, but she "just felt like Amazon was pushing [her] out, was harassing [her] because [she] got the—the benefits." (Pl.'s Depo. at 181.)  Plaintiff admitted, however, that she had no knowledge about whether Turnley was aware of the complaints she filed, but she thinks someone higher up instructed Turnley to retaliate against Plaintiff by cutting her benefits off. (*See* Pl.'s Depo. at 179-87, 194-201.)  In addition, Plaintiff admitted that it was just her belief that her STD benefits were turned off because she was disabled and based on the timing of the events. (*See* Pl.'s Depo. at 179-85, 194-201.)

"While [Plaintiff] may have believed [she] suffered discrimination [when her STD benefits were temporarily cut off], there is no evidence that such a belief was reasonable" as a "'subjective belief of discrimination . . . cannot be the basis of judicial relief.'" *Delaval*, 824 F.3d at 480 (quoting *EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1448 (5th Cir. 1995)). Thus, Plaintiff has failed to put forward any objective evidence rebutting the nondiscriminatory reason for the delay in receiving her STD payments. Consequently, Amazon is entitled to summary judgment on Plaintiff's disability discrimination claim based on that her short-term disability benefits were repeatedly cut off.

### 3. Not Being Allowed to Apply for or Notified of Other Job Opportunities

As to Plaintiff's disability discrimination claim based on that she was not notified or given the opportunity to apply for open job vacancies,[10] the Court finds and concludes that Plaintiff has established a *prima-facie* case of disability discrimination because being denied such an opportunity would constitute an adverse employment action as it would affect her compensation or the terms, conditions, or privileges of employment. (*See, e.g.*, Pl.'s Depo. at 228-29, 250-43.) *See Nieman v. Hale*, No. 3:12-CV-2433-L, 2015 WL 3504528, at *11 (N.D. Tex. June 3, 2015) (finding that there was a genuine issue of material fact whether a recruiter's refusal to refer an applicant to a job opportunity was an adverse employment action even if the applicant did not hold

---

[10] Plaintiff testified in her deposition that she searched for other jobs on Amazon's website while she was at Amazon, as well as while she was on leave. (Pl.'s Depo. at 265.) Plaintiff also testified that she was not allowed to apply for an HR job, a trainer job, or an inventory control job because she was told that either no positions were available or she could not apply because she was "on accommodations." (Pl.'s Depo. at 250.) As to the inventory control job, Plaintiff alleges that the person hired for the position was one of the manager's friends. (Pl.'s Depo. at 228-29.)

the recruiter in high esteem).[11]  In addition, Plaintiff has presented evidence that she denied such an opportunity because she was disabled and currently receiving an accommodation. (Pl.'s Depo. at 250-53.)  Thus, the burden shifts to Amazon to articulate a legitimate, nondiscriminatory reasons for its actions.

Amazon, in its motion, states that "Plaintiff has no evidence that Amazon's legitimate, nondiscriminatory reasons for its actions were pretextual for disability discrimination."  (Def.'s Br. at 14.)  However, Defendant does not articulate any legitimate, nondiscriminatory reason for its actions beyond what Plaintiff testified to—that, at least as to the inventory control job, the job was awarded to a man because he was a manager's friend.  While such a reason can be a legitimate nondiscriminatory reason for this one job,[12] Defendant fails to provide any reasons for why it told Plaintiff that no positions were available or failed to give Plaintiff the opportunity to apply for other positions when she was working with an accommodation.  Thus, Defendant has not met its burden of articulating a legitimate, nondiscriminatory reason for its actions.  Consequently, Amazon is not entitled to summary judgment on this claim.

---

[11] The Court notes that Defendant argues that Plaintiff's claim that Amazon discriminated against her for denying her the opportunity to apply for different positions fails as a matter of law because there is no evidence of Plaintiff applying for any alleged position.  (Def.'s Reply at 5. )  Such argument is nonpersuasive because Clayton cannot be expected to have applied for a position that Plaintiff was told was unavailable or that she was not allowed to apply for.  (*See* Pl.'s Depo. at 228-29, 250-53.)

Defendant also argues, citing to *Cutrera v. Board of Supervisors of Louisiana State University*, 429 F.3d 108, 113 (5th Cir. 2005),  that Plaintiff cannot now reference additional job opportunities that Amazon denied her because of her disability other than the one that she referenced in her Third Amended Complaint—which was the filling of the inventory control job with one of the manager's friends.  (Def.'s Reply at 6-7.)  In *Cutrera*, the Court found that a Plaintiff's First Amendment retaliation claim was not properly before the Court because it was not raised in Plaintiff's complaint but, instead, was raised for the first time in response to Defendant's motion for summary judgment.  This case is inapplicable to the present case as Plaintiff clearly raised a disability discrimination claim in her Third Amended Complaint.

[12] *See EEOC v. Stone Pony Pizza, Inc.*, 172 F. Supp. 3d 941, 955-56 (N.D. Miss. 2015) (finding that Defendant's claim that "its initial workforce was comprised primarily of friends and family members and word-of-mouth" was a legitimate non-discriminatory reason for not hiring people alleging claims  of racial discrimination.).

C.    **Accommodation Claim under the ADA**

In its motion, Amazon argues that it is entitled to summary judgment on Plaintiff's failure to accommodate claim because Amazon "approved Plaintiff for every accommodation and leave request that she supported with proper medical documentation." (Def.'s Br. at 14.)  Amazon claims that, "[w]hen Plaintiff provided medical documentation with lifting and gripping restrictions in August 2021, Amazon promptly approved Plaintiff for a light duty assignment doing asset tagging." (Def.'s Br. at 15.)  Amazon further states that, when "Plaintiff submitted medical documentation to add a seating accommodation, there was no issue because the light duty work could be done seated." (*Id*.)  Amazon claims, however, that when Plaintiff later requested an elevated, adjustable padded chair, Plaintiff failed to submit the updated medical documentation requested by Amazon to support such request. (*Id*.)  Amazon states that, while Plaintiff was responsible for the breakdown in communication, it "nevertheless went above and beyond by setting up an elevated desk and chair for Plaintiff pending the anticipated receipt of such documentation." (*Id*.)  Amazon argues that, to the extent Plaintiff is claiming that Amazon should have accommodated her by awarding her the job opportunity that was given to another individual, the "'ADA provides a right to reasonable accommodation, not to the employee's preferred accommodation.'" (Def.'s Br. at 15 (quoting *E.E.O.C. v. Agro Dist., LLC*, 555 F.3d 462, 471 (5th Cir. 2009)).)

Plaintiff, in her response, disputes Amazon's claims that "the evidence shows Amazon approved Plaintiff for every accommodation and leave request that she supported with proper medical documentation." (Pl.'s Resp. Br. at 17.)  Plaintiff argues that, after being assigned to perform "asset tagging" as an accommodation after her injury, "Defendant began to slowly but

consistently create a series of unnecessary obstacles which thwarted Plaintiff's attempt to work light duty with the accommodation she needed and requested." (*Id*. at 18.) Plaintiff, citing to specific pages in her deposition, states:

> First, Defendant began to remove the chair that Plaintiff needed in order to perform asset tagging, requiring her to stand to perform this duty . . . . Plaintiff states that Amy Clark, the Safety Manager, informed her that the accommodations prepared by her Case Manager did not matter and that she did not care to see the restrictions when Ms. Clayton attempted to show them to her. Ms. Clark threatened that if she did not abide by the restrictions she had typed up for her, she would be sent home without pay. Defendant forced Plaintiff away from her accommodated workspace into a different working area, and when Plaintiff requested a chair to perform her duty it was replaced with a less comfortable, folding chair—which is different than the one she previously had. Plaintiff was told by Defendant she would need to submit additional medical documentation if she wanted a chair, which she did.
>
> Defendant claims the last accommodation on file which Plaintiff submitted on October 13, 2021, did not ask for an elevated, adjustable, and/or padded chair, but only stated that "Patient requires a seating accommodation that does not exacerbate hip pain." Defendant did not attempt to find another chair that could help reduce Plaintiff's pain, but sent her back to her doctor to get more medical certification—although Plaintiff's specific needs were already outlined in the document that Defendant clearly had, especially since there were only two types of chairs in the center and Plaintiff voiced her complaint that the plastic chair caused her pain. Defendant claims that Plaintiff's failure to bring back additional document is what caused the breakdown in communication, and which is ultimately fatal to her failure to accommodate claim. This is incorrect.
>
> Plaintiff cannot bear the liability for a "breakdown in communication" related to her reasonable accommodation. Although Defendant claims the medical documentation did not state that a certain type of chair (e.g., elevated, adjustable, and/or padded) was required, her medical documentation clearly stated that the chair she was supposed to be provided should "not exacerbate hip pain." When Plaintiff made numerous complaints that the chair she had was not comfortable and was causing her pain, it was incumbent upon Amazon to re-engage her in the interactive process to find a seating accommodation that met the requirements of her medical certification. Amazon did no such thing. Amazon attempted to have Plaintiff jump through several proverbial hoops to obtain medical certification with precise and perfect wording—although this is not what the law requires.

(Pl.'s Resp. Br. at 18-19 (footnotes omitted).)

The ADA requires an employer to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee." 42 U.S.C. § 12112(b)(5)(A). To prevail on a failure-to accommodate claim, Plaintiff must show: (1) she is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations. *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021) (citing *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017)).[13] "Once an accommodation is requested an employer must engage in the 'interactive process,' or a flexible dialogue, with the employee with the goal of finding an appropriate accommodation for the limitation." *Delaval*, 824 F.3d at 481 (quoting *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009). "An employer that fails to engage in the interactive process in good faith violates the ADA." *Delaval*, 824 F.3d at 481. "Where the breakdown 'is traceable to the employee,' though, there is no violation." *Id*. (quoting *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011)).

In this case, Defendant appears to only be challenging the third element regarding whether it failed to make reasonable accommodations for Plaintiff's known limitations. In this case, it is clear that Plaintiff requested an accommodation and that Defendant granted Plaintiff an accommodation. However, what happened beyond the initial granting of the accommodation, is much less clear. (*See*, *e.g.*, Pl.'s Depo. at 133-36, 173-75, 224, 231, 241-42, 254-57.) Based on the evidence presented, the Court finds and concludes that there are genuine issues of fact whether

---

[13] "The burden-shifting framework applicable to disparate treatment claims . . . is not applicable to failure-to-accommodate claims under the ADA." *Hancock v. Securitas Sec. Servs. USA, Inc.*, No. SA-20-CV-00785-ESC, 2022 WL 675821, at *5 n.1 (W.D. Tex. Mar. 4, 2022).

Amazon engaged in the interactive process in good faith and, thus, failed to make reasonable accommodations for Plaintiff's known limitations. Consequently, Defendant is not entitled to summary judgment on this issue.

D.    **Harassment Claim Under the ADA**

Amazon also argues that "Plaintiff's disability harassment claim is . . . baseless because there is no evidence or even allegations of actionable harassment." (Def.'s Br. at 16.) In support, Defendant states:

> Here, nothing Plaintiff alleges rises to the level of "severe or pervasive" harassment as required to be actionable. Plaintiff claims [Scott] Peadons stared at her, which cannot possibly constitute "severe or pervasive" conduct. The allegation is particularly lacking because there is no suggestion that the staring had any relation to her disability and Plaintiff admits she does not know the reason for the staring. Plaintiff has not identified any other harassing comments or conduct that were based on her alleged disability. To the extent Plaintiff believes certain managers made her move workstations and/or took her chair away as a means of harassing her based on her alleged disability, she offers nothing more than rank speculation in support of her theory. Again, Plaintiff herself asserts that other disabled employees in the accommodated space were spared such treatment, firmly undercutting any notion that the alleged harassment was based on her disability.

(*Id*. at 16-17 (citations omitted).)

Plaintiff, in her response, claims that there are material facts in dispute as to her disability harassment claim. (Pl.'s Resp. Br. at 26-27.) In support, Plaintiff states:

> Plaintiff does not cite one incident, involving one person, as the basis of her disability harassment claim. Plaintiff makes other allegations of harassment beyond the one incident with Scott Peadons. In fact, Plaintiff has directly stated that the harassment she received was "ongoing" after she requested an accommodation. Plaintiff states that there were three individuals involved in harassing her, and that the treatment she was receiving was different and worse than other nondisabled employees. Specifically, Plaintiff alleges that senior managers were never seen interfacing or interacting with employees on the production floor, but that Amy Clark, Andrew Klessen and Helen Muncaster would repeatedly "scream" at her, surveille her, harass her about where she was sitting, despite having a reasonable accommodation to sit while working, and when she was

returning to work.  The record shows, and Plaintiff testifies, that there were witnesses who observed and can confirm Plaintiff's recollections of the "ongoing" harassment and her being hauled off to HR in front of her peers.

(*Id*. at 27 (footnotes omitted).)[14]

To establish a hostile work environment claim a plaintiff must prove that: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on disability; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[15]  *See Thompson*, 2 F.4th at 470-71.  "Harassment must be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment."  *Id.* at 471 (internal quotation marks and citations omitted).  "In determining whether harassment is sufficiently pervasive or severe, we consider the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Id.* (internal quotation marks and citations omitted).  "The standard for a disability-based harassment claim is 'fairly high.'"  *Butler v. Collins*, No. 3:18-CV-00037-E, 2023 WL 318472, at *16 (N.D. Tex. Jan. 19, 2023) (quoting *Flowers v. S. Reg'l Physician Servs.*, 247 F.3d 229, 236 (5th Cir. 2001)).

---

[14] In her Ethics Point report submitted on October 18, 2021, Plaintiff alleges that such acts of intimidation and harassment happened every day that she worked in the Safety Area, starting on October 5, 2021.  (Pl.'s App. at 29.)

[15] "The fifth element disappears where a harassment claim arises out of a supervisor's conduct."  *EEOC v. U.S. Drug Mart, Inc.*, No. 23-50075, 2024 WL 64766, at *1 (Jan. 5, 2024) (internal quotation marks and citations omitted).

Viewing Plaintiff's complaints in the light most favorable to Plaintiff, Plaintiff's evidence in support of her disability harassment claim is that three senior managers would repeatedly scream at her, surveille her, and harass her about where she was sitting and that she was "hauled off to HR in front of her peers." (Pl.'s Resp. Br. at 27.) Even assuming that Plaintiff has met all other factors to establish a hostile workplace claim, the Court finds and concludes that the workplace harassment Plaintiff experienced was not sufficiently pervasive or severe to alter the conditions of Plaintiff's employment and create an abusive working environment.[16] In other words, Defendant's treatment of Plaintiff was not frequently physically threatening or excessively humiliating to have affected a term, condition, or privilege of Plaintiff's employment. While the conduct highlighted by Plaintiff appears to have been hurtful and made her feel unwanted, such conduct and incidents do "not amount to the type of extreme conduct the Supreme Court requires to set forth a hostile work environment claim." *Montgomery-Smith v. George*, 810 F. App'x 252, 259 (5th Cir. 2020) (internal quotation marks and citations omitted) (finding that incidents involving repeated denials of promotions, a coworker laughing and glaring at Plaintiff, Plaintiff's office being moved, Plaintiff being isolated from her coworkers, and Plaintiff not being invited to office or other events did not rise to the type of extreme conduct required to set forth a racial hostile work environment claim); *see Friend v. City of Greenwood*, *Miss.*, No. 4:19-CV-18-SA-JMV, 2020 WL 2306112, at *6 (N.D. Miss. May 5, 2020) (collecting cases referencing sexual hostile work environment

---

[16] In addition, the Court notes that Plaintiff has failed to provide competent evidence that any of the alleged harassment she complains of was based on her disability. *See, e.g.*, *Moyer v. Jos. A. Bank Clothiers, Inc.*, No. 3:11-CV-3076-L, 2013 WL 4434901, at *9-10 (N.D. Tex. Aug. 19, 2013) (finding that Plaintiff had failed to establish a *prima-facie* case of sexual harassment because she could not show that any of the alleged harassment was based on her sex). In fact, in her deposition, Plaintiff, while claiming that she was being harassed because of her disability, admits that the other people in her area that were not being harassed were also disabled. (*See* Pl.'s Depo. at 219-21, 223-27.)

claims). Consequently, Defendant is entitled to summary judgment on Plaintiff's disability harassment claim.

E. **Retaliation Claim under the ADA**

In its brief, Amazon argues that it is entitled to summary judgment on Plaintiff's disability retaliation claim because Amazon did not take any materially adverse action against Plaintiff because of Plaintiff's alleged protected activity. (Def.'s Br. at 17-18.) Defendant argues that Plaintiff's claim that Amazon cut off her STD benefits in retaliation for requesting an accommodation or making protected complaints fails because: (1) Plaintiff did not suffer a materially adverse action as Plaintiff's STD benefits were only briefly delayed due to a back log in processing and (2) an administrative backlog is a legitimate, nonretaliatory reason having nothing to do with Plaintiff's protected activities and Plaintiff has no evidence that such reason was a pretext for disability retaliation. (*Id*.)

Plaintiff, in her response, claims that "having her STD pay cut off multiple times, being harassed, and having her accommodation yanked from her on several occasions" are materially adverse acts. (Pl.'s Resp. Br. at 29.) In supports, Plaintiff states:

> Plaintiff began receiving STD benefits, along with FMLA leave, in October 2021, and stopped receiving such benefits on or about April 23, 2022. Plaintiff disputes that she requested to be placed on short-term disability. She wanted to continue to work with the proper accommodation. . . . While on short-term disability, Defendant intentionally put barriers in Plaintiff's path, such as cutting off her monetary benefits on multiple occasions and refusing to respond to her requests for information or clarification. Donna Turnley, Plaintiff's case manager, refused to communicate with Plaintiff at all.

> Defendant acknowledges that Plaintiff did not receive her disability benefits in December and January, but attributes these omissions to "delays in processing due to [a] backlog." Defendant cites to no evidence from the STD insurer regarding this allegation. There is evidence, however, that these actions were taken against Plaintiff in response to her complaints with Amazon Ethics Point, NIOSH and

21

OSHA, which she filed on August 11, 2021, October 18, 2021, and October 20, 2021. Defendant knew about these protected activities, not only because several of Amazon's agents were named in the complaints and copied on the emails submitting the complaint, but also because Ms. Clayton outright informed Ms. Turnley that she was going to file a complaint against her with DOL for her unresponsiveness and incompetence. . . .

Defendant's assertion that the retaliation claim fails because Plaintiff's STD benefits were only "briefly delayed" and that Amazon "promptly" investigated as to why her benefits were shut off is incorrect. . . . In fact, Plaintiff was shuffled around to several different individuals, none of whom could provide information about the status of her case or why she was being denied pay. Ms. Turnley, the Case Manager assigned to Plaintiff's case and the only person authorized to make changes to her account, refused to respond to her requests at all. Plaintiff's benefits being denied was the impetus behind her being evicted from her home and having to move back in with her adult daughter. . . .

(Pl.'s Resp. Br. at 29-30 (alterations in original) (footnotes omitted).)[17]

In its reply, Amazon claims that "Plaintiff . . . fails to supply any trial-worthy facts to save her disability retaliation claim." (Def.'s Reply at 14.) Amazon argues that, contrary to Plaintiff's assertions, Amazon is not required to produce evidence from the STD insurer regarding the administrative backlog in payments. (*Id.*) Amazon claims that "Plaintiff does not dispute that she did ultimately receive all STD funds she expected and offers no authority in support of her contention that the temporary delay at issue could constitute a materially adverse action sufficient to sustain a retaliation claim." (*Id.* (footnote omitted).) Amazon also argues that there is "simply no evidence of causation—*i.e.*, that Amazon delayed her benefits *because* Plaintiff engaged in protected activity." (Def.'s Reply at 15.) In support, Defendant states:

---

[17] Plaintiff claims she was "forced" onto STD on October 24, 2021. (Pl.'s Resp. Br. at 8.) Although not entirely clear, it appears that Plaintiff filed an EEOC complaint as well as three Ethics Point Complaints, on August 11, 2021, October 18, 2021, and October 20, 2021, respectively. (*See* Pl.'s App. at 8.) In addition, on "October 25, 2021, Plaintiff made a complaint to the Department of Justice, OSHA and NIOSH about Amazon's unsafe work environment and the fact that she believed she was facing disability discrimination harassment and retaliation." (Pl.'s Resp. Br. at 8.)

> Critically, Plaintiff has produced *no* evidence that the relevant decisionmaker had knowledge of any protected complaint. Plaintiff asserts that "Amazon's agents were named in the complaint and copied on the emails submitting the complaint," *see* Opp. at 30, but she does not identify what "agents" were named or copied, and the record evidence she cited in footnote 70 does *not* support the contention that they were copied on or otherwise notified of Plaintiff's complaint. *See* Pl.'s App. 000011-16, 000071. . . .
>
> Furthermore, the only person to whom Plaintiff ascribes retaliation is Donna Turnley. As to Turnley, Plaintiff could produce no evidence of Turnley even being aware of the various complaints she allegedly made. *See* Def[.]'s App. 000037-40. Rather, Plaintiff asserts that she told Turnley she was "going to file" a complaint with the Department of Labor "for her unresponsiveness and incompetence." *See* Opp. at 30; Pl.'s App. 000071. Even if true, however, this claim fails because future, hypothetical conduct cannot form the basis of protected activity. . . .

(Def.'s Reply at 15.)

"The ADA prohibits retaliation against those who exercise their ADA rights." *Butler*, 2023 WL 318472, at *19. Similar to discrimination claims under the ADA, in the absence of direct evidence of unlawful retaliation, courts apply the burden-shifting scheme established in *McDonnell*, *supra*. *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020). Thus, under the *McDonnell* framework, a plaintiff establishes a *prima-facie* case of retaliation under the ADA by showing the following: (1) Plaintiff participated in an activity protected under the statute; (2) Plaintiff's employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action. *See Lyons*, 964 F.3d at 304; *Stringer v. N. Bolivar Consol. Sch. Dist*, 727 F. App'x 793, 803-04 (5th Cir. 2018).

"If the employee establishes a prima facie case of retaliation, the employer must come forward with a legitimate, nondiscriminatory reason for its action." *Lyons*, 964 F.3d at 304. "If the employer meets its burden of production, the employee must then demonstrate that the proffered reason is a pretext for retaliation." *Id.* "[To establish pretext] [o]n claims of retaliation,

Plaintiff must show that the adverse employment action would not have occurred 'but for' her engagement in protected activity." *Butler*, 2023 WL 318472, at *24. "The 'but for' causation standard is more difficult to prove than prima facie causation." *Id.*; *see Strong v. Univ. Healthcare Sys.*, *L.L.C.*, 482 F.3d 802, 808-09 (5th Cir. 2007) (discussing "very close" temporal proximity as potentially sufficient to meet *prima facie* standard but insufficient to meet "but for" causation standard). "Ultimately, the employee must show that but for the protected activity, the adverse employment action would not have occurred." *Long*, 964 F.3d at 304 (internal quotations marks and citations omitted).

In this instance, as to a *prima-facie* case, Defendant argues that Plaintiff has failed to establish prongs two and three—that Defendant took an adverse employment action against Plaintiff and that a causal connection exists between Plaintiff's protected activity and the adverse action. Even assuming that Amazon's delay in providing Plaintiff with her STD benefits was an adverse employment action (as the Court assumed above in considering whether Plaintiff's delay as to her STD benefits constituted disability discrimination), to establish a causal connection, Plaintiff must show that Amazon acted in delaying Plaintiff's receipt of such benefits *because* Plaintiff engaged in a protected activity. "To demonstrate the third element of a prima facie case of retaliation—a causal connection between the protected activity and the adverse action—a plaintiff must demonstrate that the employer's decision was based on part on knowledge of the employee's protected activity." *Lyons*, 964 F.3d at 305 (internal quotation marks and citations omitted); *see Nall v. BNSF Ry. Co.*, 917 F.3d 335, 349 (5th Cir. 2019) ("A causal link is established when the evidence demonstrates that the employer's decision to terminate was based in part on knowledge of the employee's protected activity."). In some circumstances, the causal connection

may be established by temporal proximity between the relevant events, but such proximity must be very close. *Lyons*, 964 F.3d at 305.

In this case, Plaintiff was injured on June 16, 2021. (Pl.'s Depo. at 110.) Plaintiff notified Defendant of her injury and opened an accommodation case on July 26, 2021, and, thereafter, submitted various medical documentation. (Def.'s App. at 91-92.) Plaintiff was approved for temporary light duty, and, after being off the schedule for more than a month, was moved to asset tagging. (Pl.'s Resp. Br. at 11; *see* Def.'s App. at 91-92; Pl.'s Depo. at 235.) On August 11, 2021,[18] October 18, 2021,[19] and October 20, 2021, Plaintiff filed three internal Ethics Complaints with Amazon. (Pl.'s Resp. Br. at 12; *see* Pl.'s Depo. at 264-65; Pl.'s App. at 28-33.)[20] According to Plaintiff, she was "unilaterally" placed on STD on October 24, 2021[21] (four days after her third Ethics Point complaint) and Turnley was assigned as her case manager. (Pl.'s Resp. Br. at 12.) Thereafter, on "October 25, 2021, Plaintiff made a Complaint to the Department of Justice, OSHA and NIOSH about Amazon's unsafe work environment and the fact that she believed she was being

---

[18] On August 11, 2021, Plaintiff filed a report with Amazon's Ethics Point website complaining that she "has been waiting for her accommodation request to be approved." (Pl.'s App. at 28.) She also reported various acts of intimidation and harassment by several people in the "Safety" area, Wilson in Human Resources, and various managers. (*Id.* at 29.) Plaintiff also claims that she emailed Lisa Figueroa ("Figueroa") on October 14, 2021, requesting help, but Figueroa did not respond. (Pl.'s Br. at 12 (citing to Plaintiff's Original Complaint, which is not the live pleading in this case, at 12).)

[19] According to Amazon's Investigation Report, on October 18, 2021, "Clayton raised concerns to the Ethics Hotline that Sr. Human Resources Assistant . . . Carmen Wilson accused her of accessing confidential files, and that Operations Manager Andrew Klassen, . . . Amy Clark, Wilson, and . . . Helen Muncaster did not allow her to use an elevated padded adjustable chair for her accommodation, which caused her pain. (Def.'s App. at 109.)

[20] Plaintiff states that she also filed: (1) "two EEO Complaints—one in early 2022 and the other after she was constructively terminated" (Pl.'s Resp. Br. at 12 (citing Pl.'s App. at 17-20 and Pl.'s Depo at 82-83) and (2) another Ethics Point complaint on January 10, 2022, when she was on STD (Pl.'s Resp. Br. at 12 (citing Pl.'s App. at 49-53).)

[21] In her deposition, Plaintiff states that she was notified on October 27, 2021, that she was approved for STD. (Pl.'s Depo. at 175.)

harassed and facing disability discrimination." (Pl.'s Br. at 12 (footnote inserted); *see* Pl.'s App. at 11-16, 25-27, 48; Def.'s App. at 34-49.)

Based on this sequence of events and the evidence in the record, the Court finds and concludes that Defendant did not, at least initially, retaliate against Plaintiff for any protected activity as Defendant actually *awarded* Plaintiff STD benefits two short months *after* her first complaint and four days after her third complaint. Moreover, while Plaintiff did not timely receive her STD benefits in December and January 2021, approximately two months after she had engaged in the protected activity in October 2021, she did receive those STD benefits at the end of January 2022, on approximately January 24, 2022, as well as all other STD benefits that were owed to her. (*See* Def.'s App. at 125; Pl.'s Depo. at 179-80.) Based on this temporal interplay of the events in question, the Court further finds and concludes that no reasonable inference of causation emerges between Plaintiff's protected activity and the alleged retaliatory conduct of not timely paying Plaintiff her STD benefits. This conclusion is further supported by the lack of non-conclusory, competent summary judgment evidence provided by Plaintiff that Turnley, the person in charge of Plaintiff's STD benefits, actually knew of Plaintiff's protected activity prior to mid-January. (*See* Pl.'s App. at 35-37, 53 (showing Turnley was copied on emails dated beginning on January 17, 2022 referencing Plaintiff's belief that she was being retaliated against).) *See Echevarria v. AstraZeneca, LP*, 133 F. Supp. 3d 372, 402 (D. P.R. 2015) ("There must be proof that the decision maker knew of the plaintiff's protected conduct when he or she decided to take the adverse employment action.").

Nevertheless, even assuming Plaintiff has established a *prima-facie* case of retaliation under the ADA, Defendant would still be entitled to summary judgment if it can show it had a

legitimate, nondiscriminatory reason for its actions and Plaintiff cannot show such reason was a pretext for discrimination. *See Lyons*, 964 F.3d at 306-07. As set forth above in section II.B.2., which discusses Plaintiff's disability discrimination claim relating to her delay in STD benefits, Amazon claims that the errors in processing Plaintiff's STD were due to a backlog and that Plaintiff did eventually end up receiving all of her STD benefits. (Def.'s Br. at 8-9; *see* Def.'s App. at 124-25; Pl.'s Depo. at 179, 267-68.) Thus, the burden shifts back to Plaintiff to show that such reason is a pretext for retaliation. *See Lyons*, 964 F.3d at 306. Plaintiff, for the reasons set forth above in section II.B.2., has failed to direct the Court to any non-conclusory summary judgment evidence in the record that reveals that the real motive for the delay was an unstated reason that is retaliatory and that Defendant's act relating to delaying Plaintiff's STD benefits were pretextual or unworthy of credence. Consequently, Amazon is entitled to summary judgment on Plaintiff's disability retaliation claim.

### F.    **Defendant's Objections to Plaintiff's Summary Judgment Evidence**

On December 19, 2024, Defendant filed its Objections to Plaintiff's Summary Judgment Evidence [doc. 118], where it objected to eighty-one statements made by Plaintiff in her Response to Defendant's Motion for Summary Judgment. The Court **OVERRULES** the following objections set forth by Defendant because such statements were not relied on by the Court in ruling on Defendant's Motion for Summary Judgment: 1, 2, 3, 6, 7, 8, 9, 11, 12, 21, 22, 24, 25, 26, 28, 29, 31, 32, 33, 43, 44, 47, 48, 49 (first sentence), 57, 58, 59, and 61.

The Court **OVERRULES** the following objections set forth by Defendant because such statements, even if relied on by the Court, relate to claims upon which the Court ultimately found

that Defendant was entitled to summary judgment 4, 5, 13, 14, 15, 16, 18, 20, 27, 38, 39, 40, 41, 42, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, and 82.

The Court **OVERRULES** the following objections as the Court finds such statements are competent, summary judgment evidence for one of the following reasons: (1) the statements cited to specific pages in either Plaintiff or Defendant's appendix; (2) the statements were an introductory sentence that was followed by statements that cited to competent, summary judgment evidence; or (3) the statements were a follow-up or conclusory sentence to which Plaintiff (or Defendant) had already provided or later provided competent, summary judgment evidence for: 10, 23, 30, 34, 35, 36, 37, 45, 46, 49 (second sentence), 50, 51, 52, 53, 54, 55, 56, 60, 62, 63, and 64.

The Court **SUSTAINS** the following objections: 17 and 19.

## RECOMMENDATION

For the reasons set out above, the Court **RECOMMENDS** that Amazon's Motion for Summary Judgment [doc. 97] be **PARTIALLY DENIED** as to Plaintiff's claim for disability discrimination based on not being allowed to apply for or notified of other job opportunities and Plaintiff's claim for failure to accommodate and **PARTIALLY GRANTED** as to all other claims.

The Court further **RECOMMENDS** that Defendant's Objections to Plaintiff's summary judgment evidence be **PARTIALLY OVERRULED** and **PARTIALLY SUSTAINED** as set forth above.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED
## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document.  The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made.  *See* 28 U.S.C. § 636(b)(1).  Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge.  *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections to 14 days).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **April 10, 2025,** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation.  It is further **ORDERED** that if objections are filed,

and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusion, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED March 27, 2025.

_____

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE